IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| HAYLEE CHEEK, et al., <br><br> Plaintiffs, <br><br><br> vs. <br><br><br> SCOTT GARRETT, et al., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS FILED BY STATE AND ATTORNEY GENERAL <br><br><br><br><br><br> Case No. 2:10-CV-508 TS |

## I. INTRODUCTION

The State of Utah (State) and the Utah State Attorney General (AG) move to dismiss Plaintiffs' §1983 and §1985 civil rights claims. The State's and AG's Motion to Dismiss is one of several pending motions in this multiple defendant civil rights case. This Order addresses only the State's and the AG's Motion. The Court grants the State's Motion to Dismiss under the Eleventh Amendment and because it is not a "person." The Court grants the AG's Motion because there is no allegation of a factual link personal participation.

## II. BACKGROUND

In their Complaint, Plaintiffs name thirty-one separate Defendants[1] and allege numerous civil rights violations for actions taken by state, county and city officials.[2]

Plaintiffs allege that they are the victims of persecution from a conspiracy orchestrated by Iron County Attorney, Scott Garrett ("Garrett"), using the Iron County Sheriff's Department, the Iron County Narcotics Task Force, the Cedar City Police Department, Intermountain Health Care, and the Division of Child and Family Services ("DCFS").[3] Plaintiffs allege that Garrett formed a conspiracy to "retaliate, harass, intimidate, and threaten" Plaintiffs for "refusing to accept plea bargains and defending against the State's trumped up allegations."[4] As a result of the conspiracy, Plaintiffs claim to have suffered deprivations of their rights during the course of arrests and incarcerations and the allegedly illegal removal of Plaintiffs' children by DCFS.[5]

The Plaintiffs do not allege that either the State or AG were directly involved in the actual deprivation of their rights, either before the formation of the alleged conspiracy, or in furtherance of the conspiracy. Instead, Plaintiffs allege that the State and AG have violated their constitutional rights by failing to adequately supervise and train county employees.[6]

---

[1] *See* Docket No. 2.

[2] *Id*. ¶¶ 230-231.

[3] Docket No. 2, at ¶ 2.

[4] *Id.*

[5] *See Id*. ¶¶149-219.

[6] *See Id*. ¶¶ 233-236.

The State moves to dismiss under Fed. R. Civ. P. 12(b)(6)[7] because the Eleventh Amendment bars such § 1983 claims against the State and because the State is not a "person" subject to suit for purposes of § 1983.[8] The AG moves to dismiss the §1983 claim because Plaintiffs fail to allege a factual link between the AG's conduct and the alleged constitutional deprivation and because government officials are not vicariously liable for the alleged misconduct of their subordinates.[9]

Plaintiffs did not file a response directly addressing the State's and AG's Motion to Dismiss. However, Plaintiffs do reference the arguments made by the State and the AG in responses that they have filed to other Defendants' motions, including their opposition to Defendants' Motion to Dismiss for Timeliness and their opposition to Defendants' Motion to Dismiss and Sever.[10] Plaintiffs allege that since their claims are based upon a conspiracy under §1985, the Defendants are all "jointly and severally liable for the acts that have transpired and continue to transpire" which Plaintiffs allege, "includes but is not limited to including other members of the same system to now deprive Plaintiffs of life as they have known it, liberty and property."[11]

Thus, at issue is whether the allegation that Defendants are members of an Iron County system of conspiracy can overcome the State's and AG's assertions that they are entitled to Eleventh

---

[7]Docket No. 8.

[8]*Id.*

[9]*Id*.

[10]*See generally* Docket No. 43 and Docket No. 44.

[11]Docket No. 43.

3

Amendment immunity, are not "persons" under § 1983, and were not personally involved in the alleged constitutional deprivations.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."[12] "The Court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[13] Thus, the court accepts all well-pleaded factual allegations in a complaint as true and construes them in the light most favorable to the plaintiff.[14] In sum, "dismissal is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[15]

## IV. CLAIMS AGAINST THE STATE

A.   ELEVENTH AMENDMENT IMMUNITY

The State argues that Plaintiffs claims are barred by the Eleventh Amendment and that, as such, do not state a claim upon which relief can be granted and, therefore, must be dismissed.[16]

---

[12] Fed.R.Civ.P. 12(b)(6)

[13] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

[14] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[15] *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008)

[16] Docket No. 9, at 3.

The Eleventh Amendment presupposes that each State is a sovereign entity in our federal system and that "it is inherent in the nature of sovereignty not to be amenable to suit of an individual without a State's consent."[17] Indeed, the Supreme Court has held the following:

> [R]eferring to the states' immunity from suit as Eleventh Amendment Immunity . . . is something of a misnomer, for the sovereign immunity of the states neither derives from, nor is limited by, the terms of the Eleventh Amendment. Rather . . . the states' immunity from suit is a fundamental aspect of the sovereignty which the states enjoyed before the ratification of the Constitution, and which they retain today.[18]

The Supreme Court has recognized state sovereignty through the Eleventh Amendment deference and has only provided for three limited exceptions. First, under the doctrine of *Ex Parte Young*, a narrow class of cases are allowed to proceed against state officials; second, a state may waive its sovereign immunity or otherwise consent to suit; and third, Congress may in narrow circumstances abrogate state sovereign immunity.[19]

The State argues that the first exception, the doctrine of *Ex Parte Young*, does not apply in this case.[20] The doctrine of *Ex parte Young* allows a complainant to plead around the Eleventh Amendment and seek an injunction preventing future federal constitutional or statutory violations resulting from a state's policy or customs.[21] Only prospective relief may be sought through an *Ex*

---

[17]*Seminole Tribe v. Florida,* 517 U.S. 44 (1996) (citing *Hans v. Louisiana*, 134 U.S. 1, 13 (1890)).

[18]*Alden v. Maine*, 527 U.S. 706, 713 (1999).

[19]13 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3524 (3d ed. 2010).

[20]Docket No. 9, at 4.

[21]*Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young,* 209 U.S. 123 (1908)).

5

*Parte Young* claim and it must be pursued against the state official who implements the policy or custom causing the constitutional deprivation.[22] A claim for prospective relief against the state itself, or a state agency, will be barred by the Eleventh Amendment.[23] The implementation of the state policy or custom may be reached in federal court because actions against a state official, in his official-capacity, and for prospective relief, are not treated as actions against the state.[24]

In Count II of their Complaint, Plaintiffs allege that it was the "policy and or custom" of those in a supervisory position, including the State, to fail to adequately supervise and train those county employees that violated Plaintiffs constitutional and civil rights.[25] Plaintiffs also seek what could be interpreted as prospective injunctive relief to prevent further violations as a result of these policies and customs.[26] Indeed, Plaintiffs argue that, in "reference to the 11th Amendment, and the lack of being able to sue the government . . . *Hafer v. Melo*, handles that problems [sic]."[27]

Plaintiffs do not cite any specific language in *Hafer*. However, from its own review, the Court notes that Plaintiff may have intended to rely on the following: "Because the real party in

---

[22]*Id.*

[23]Martin A. Schwartz and Kathryn R. Urbonya, § 1983 Litigation 126-27 (Federal Judicial Center 2d ed. 2008) (citing Alabama v. Pugh, 438 U.S. 781, 782 (1978)).

[24]*Graham*, 473 U.S. at 167 & n.14.

[25]Docket No. 2, at 42-43.

[26]Id. at 45.

[27]Docket No. 44 at 5; *see Hafer v. Melo*, 502 U.S. 21 (1991) (Where disgruntled discharged commonwealth employees bought an action against Pennsylvania Auditor General, the Court held that state officers may be personally liable for damages under ' 1983 based upon actions taken in their official capacities).

interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a part in the violation of federal law.'"[28] On its face, this statement seems to imply that if a government "policy or custom" played a part in the violation of a federal law, then an action may be brought against the government. This however, would be an incorrect interpretation of the Court's holding in *Hafer*, as it is actually quoting language from a previous Supreme Court case addressing *Ex Parte Young* claims.[29] Thus, for Plaintiffs to maintain an action under this language, as they seem to attempt, they must still meet all the requisites of an *Ex Parte Young* claim. Because Plaintiffs have named the State as the Defendant, rather than an individual state officer, the *Ex Parte Young* exception does not apply.

The second exception to Eleventh Amendment immunity is derived from the common law doctrine of sovereign immunity, which precludes litigation against an "unconsenting" government.[30] When a state consents to suit, sovereign immunity and the Eleventh Amendment are waived.[31] Plaintiffs indicate that the Governor's Office was put on notice of the claim because, "Plaintiffs just wanted to cover all the bases."[32] Plaintiffs do not assert that the State has consented to suit in federal court. Because the State has not consented to suit, this exception does not apply.

---

[28]*Id*. at 25 (quoting *Graham*, 473 U.S. at 166).

[29]*Graham*, 473 U.S. at 166.

[30]*See Montana v. Gilham*, 932 F.Supp. 1215, 1219 (D.Mont. 1996) (citing Restatement (Second) of Torts § 895B)), *aff'd*, 133 F.3d 1133 (9th Cir. 1997).

[31]*Pugh*, 438 U.S. 781, 782.

[32]Docket No. 44 at 3.

Lastly, the Supreme Court has held that Congress may affirmatively abrogate states' Eleventh Amendment immunity under certain narrow circumstances. With regard to § 1983, the Supreme Court has already held that Congress did not intend to abrogate state sovereign immunity under the Eleventh Amendment.[33] Thus, Plaintiffs cannot use this exception to Eleventh Amendment immunity to maintain a suit against the State under § 1983.

In sum, Plaintiffs' 1983 claim against the State fails to qualify for any of the exceptions to Eleventh Amendment immunity and Plaintiffs fail to state a claim against the State for which relief can be granted.

B.  THE STATE IS NOT A "PERSON"

Even if the State is not immune, it argues it is not a "person" subject to suit under § 1983.[34] Section 1983 provides a remedy against "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."[35] Only "persons," as that term has been defined by the courts, are subject to suit under § 1983.[36] The Supreme Court and the Tenth

---

[33]*Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Neither logic, the circumstances surrounding the adoption of the Fourteenth Amendment, nor the legislative history of the 1871 Act compels . . . the conclusion that Congress intended . . . to overturn the constitutionally guaranteed immunity of the several states); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 & n.10, 109 (1989) (noting that states are not "persons" within the meaning of §1983).

[34]Docket No. 9, at 5.

[35]42 U.S.C. § 1983 (emphasis added).

[36]*Ambus v. Utah State Bd. of Educ.*, 858 P.2d 1372, 1376 (Utah 1993) (citing *Will*, 491 U.S. at 71).

8

Circuit have made clear that "neither the state, nor a governmental entity that is an arm of the state for Eleventh Amendment purposes . . . is a person within the meaning of § 1983."[37] Therefore, the § 1983 claim against the State is not a valid basis for relief because the State is not a liable party under § 1983.

## V. CLAIMS AGAINST THE AG

As mentioned previously, an action under § 1983 may only be brought against a "person," as that term has been defined by the courts.[38] Although government officials, such as the AG, are "persons" in the literal sense of the word, for purposes of liability under § 1983, the question of whether a governmental official such as the AG is a "person" turns on whether they are sued in their official or individual capacity.[39]

Plaintiffs do not designate whether they are making their claims against the AG in his official or personal capacity. The State correctly argues that a suit against a state official, such as the AG, in his official capacity, is essentially a suit against the AG's office and therefore is treated as such to determine whether the action may be maintained.[40] Thus, a suit against the AG in his official capacity is granted Eleventh Amendment immunity and for such purposes the AG is not a "person" as required for a § 1983 claim.[41]

---

[37]*Harris v. Champion*, 51 F.3d 901, 905-06 (10th Cir. 1995); *Will*, 491 U.S. at 71.

[38]42 U.S.C. § 1983 (emphasis added); *Ambus*, 858 P.2d at 1376 (citing *Will*, 491 U.S. at 71).

[39]2 Civ. Actions Against State & Loc. Gov't §12:75; *see also Will*, 491 U.S. at 71.

[40]*Will*, 491 U.S. at 71.

[41]*Id*.

Governmental officials may be sued as "persons" in their individual capacities for civil rights violations that occur during the performance of their official duties.[42] Individual or personal capacity suits seek to impose personal liability upon the government official for actions taken in the performance of official duties.[43] Officials sued in their personal capacities come to court as individuals.[44] In order to maintain a § 1983 claim against the AG, Plaintiffs must allege sufficient facts to demonstrate that the AG violated their rights in his personal capacity i.e., in the performance of his duties. Plaintiffs must demonstrate an "affirmative link" between the AG's conduct and the alleged constitutional violations or personal participation in intentionally or deliberately violating their rights.[45]

Plaintiffs have failed to allege any facts in their Complaint that directly link the AG to the alleged constitutional violations.[46] Further, liability is also not available under § 1983 through the doctrine of respondeat superior.[47] The AG cannot be held liable for the actions of those he

---

[42]*Hafer*, 502 U.S. at 25.

[43]*Id.* at 24-25.

[44]*Graham*, 573 U.S. at 167-68.

[45]*Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992), *cert. denied*, 509 U.S. 923 (1993).

[46]Docket No. 9, at 5.

[47]*Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691-92 (1978).

supervises unless he personally participated in the unconstitutional act[48] because "supervisor status by itself is insufficient to support liability."[49]

In one of their responses to other motions, Plaintiffs concede that the AG was not named as a party to the lawsuit and seem to concede that the AG is not a "person" for purposes of § 1983.[50] Given the dearth of allegations of personal participation on the part of the AG and the statements by Plaintiffs, it would seem that the AG is merely listed in the caption of the Complaint because of his official role as AG for the State. Accordingly, the suit is not a suit against the AG in his personal capacity, but is a suit against the role of the AG as an official for the State. As such, the claim against the AG should be treated as a claim against the State and for the reasons stated above is barred by Eleventh Amendment immunity.

## VI. CONSPIRACY ALLEGATIONS

Plaintiffs argue that a Motion to Dismiss on the part of any of the Defendants should not be granted because all of the Defendants are members of the same "system of conspiracy" and are "jointly and severally liable" for the alleged deprivations.[51] Plaintiffs claim damages under both §§

---

[48] *Bennett*, 545 F.2d at 1262-63.

[49] *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).

[50] *See* Docket No. 44 at 3 ("Counsel received a Motion to Dismiss filed for Attorney General, Mark Shurtleff, which didn't make sense again, seeing that he was not a named party to the lawsuit, just a government entity that was not a 'person,' but one that would be responsible for the Iron County DCFS, in the fact that the AG's office advises and represents various government agencies.")

[51] Docket No. 43, at 1.

1983 and 1985, which provide relief against a conspiracy to interfere with civil rights.[52] It appears that the Plaintiffs are alleging that the State and AG cannot be dismissed because alleging a conspiracy to violate civil rights circumscribes all other immunities. To the extent this is the argument Plaintiffs are making, it fails for the following reasons.

First, numerous federal courts have held that the Eleventh Amendment bars conspiracy claims brought against a state or a state official acting in an official capacity under § 1985 as well as § 1983.[53]

Second, Plaintiffs seem to be alleging the conspiracy impeded the due course of justice in state court and state administrative proceedings and deprived Plaintiffs of life, liberty, and property.[54] Such claims would fall under § 1985 subsection (2) *obstructing justice* and subsection (3) *depriving persons of rights or privileges*.[55] In order to successfully plead under either of these subsections the Plaintiffs must have alleged class-based animus.[56] Because Plaintiffs have failed to allege any class-

---

[52] 42 U.S.C.A. § 1985.

[53] *See Ellis v. Univ. of Kan. Med. Ctr.,* 163 F.3d 1186, 1196 (10th Cir. 1998) (Congress did not abrogate the states' Eleventh Amendment immunity when it enacted § 1985); *see also Barger v. State of Kan.*, 620 F. Supp. 1432, 1434 (D. Kan. 1985) *on reconsideration*, 630 F. Supp. 88 (Plaintiff's §§ 1983 and 1985 claims are barred by the Eleventh Amendment and must be dismissed); *An-Ti Chai v. Mich. Techn. Univ.*, 493 F.Supp. 1137, 1162 (W.D. Mich. 1980) (States are immune from suits under § 1983 and § 1985).

[54] Docket No. 43, at 1-2.

[55] 42 U.S.C. § 1985.

[56] *Kush v. Rutledge*, 460 U.S. 719, 725 (1983) ("The second part of § 1985(2) applies to conspiracies to obstruct the course of justice in state courts, and the first part of § 1985(3) provides a cause of action against two or more persons who 'conspire or go in disguise on the highway or on the premises of another.' Each of these portions of the statute contains language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the

based animus in their Complaint, relief cannot be granted to Plaintiffs under their claim of a conspiracy under § 1985.

Finally, any claim for conspiracy against the State and AG, in his official capacity under § 1983 would also not be valid because neither are "persons" for purposes of §1983 and because such claims are barred by Eleventh Amendment immunity.

## VII. CONCLUSION

The Court grants the Motion to Dismiss as to both the State and AG. The State is not a proper party in this lawsuit as the law is clear that a § 1983 action cannot be maintained against the State because (1) such claims are barred by the Eleventh Amendment; and, (2) the State is not a "person" subject to suit under § 1983. The claims against the AG will be dismissed because (1) to the extent the AG is sued in his official capacity, he is also protected by Eleventh Amendment immunity and further is not a "person" subject to suit under § 1983 and (2) Plaintiffs have failed to allege facts sufficient to maintain an action against the AG in his personal capacity, namely an affirmative link between his conduct and the alleged constitutional violations.

As to the conspiracy allegation, the State and AG, in his official capacity, are protected from suit under either § 1983 or § 1985 as outline above and the § 1985 conspiracy claim is not viable because Plaintiffs have not alleged class-based animus.

Upon review of the record, the Court finds that a hearing will not materially assist in resolving the motion. It is therefore

---

equal protection of the laws."); *see also*: *Lessman v. McCormick*, 591 F.2d 605, 608 (10th Cir. 1979); *Trujillo v. City of Albuquerque*, 211 F. App'x. 670, 673 (10th Cir. 2006).

ORDERED the State's and AG's Motion to Dismiss (Docket No. 8) is GRANTED. It is further

ORDERED that having been dismissed from this case, the State and AG need not appear at the March 14, 2011 hearing set on the remaining pending motions in this case.

DATED March 8, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge